IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| LEONARD BINGHAM | CASE NO. 3:20-cv-01846-BYP |
| Petitioner, | JUDGE BENITA Y. PEARSON |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| JAMES HAVILAND, | **REPORT AND RECOMMENDATION** |
| Respondent. | |

On August 19, 2020, Petitioner Leonard Bingham, through counsel, filed a petition for a writ of habeas corpus. (ECF #1-1 at PageID 17). Mr. Bingham initially advanced two claims for habeas relief: deficiencies in a search warrant leading to a Fourth Amendment violation, and denial of a motion to withdraw pleas constituting a due process violation. (ECF #1 at PageID 7-8). The District Court has jurisdiction over the petition under § 2254(a). On March 19, 2021, pursuant to Local Civil Rule 72.2, this matter was referred to a Magistrate Judge for preparation of a Report and Recommendation. (Non-document entry of March 19, 2021). On May 25, 2021, the matter was reassigned to me pursuant to General Order 2021-06. (Non-document entry of May 25, 2021). Respondent (hereinafter, the State), filed the Return of Writ on July 30, 2021 (ECF #7). Mr. Bingham filed the Traverse on October 21, 2021. (ECF #9).

For the reasons discussed below, I recommend the Petition be **DENIED**. I further recommend the District Court **DENY** a Certificate of Appealability for all grounds for relief.

## PROCEDURAL HISTORY

### Factual Findings of the Court of Appeals

The Third District Court of Appeals, Allen County, Ohio, set forth the facts of this case on direct appeal. These factual findings "shall be presumed to be correct" and Mr. Bingham has the burden of rebutting this presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The Third District determined:

> [¶ 2] In February 2016, the Lima Police Department became aware of potential drug activity taking place at 419 South Collett Street ("419 S. Collett") in Lima, Ohio—a residence that was then owned by Bingham. Over the following one and one-half months, law enforcement officers received numerous reports documenting activity at 419 S. Collett that was consistent with drug trafficking, including the observation of what witnesses believed to be drug transactions in a parking lot adjacent to the residence. On March 30, 2016, law enforcement officers, with the participation of a confidential informant, conducted a controlled buy of marijuana from 419 S. Collett. Based on this controlled buy and the collection of citizen reports, law enforcement officers subsequently obtained a warrant to search the residence, which was executed on the evening of April 1, 2016. During the course of the search, officers discovered a firearm and a small quantity of crack cocaine concealed within a shoebox that Bingham was seen carrying into the residence. Furthermore, the search uncovered a gallon-sized freezer bag full of marijuana, other, smaller quantities of marijuana and cocaine, and materials evidently used to manufacture crack cocaine.

*State v. Bingham*, 141 N.E.3d 614, 619-20 (Ohio Ct. App. 2019).

### State Court Conviction

On May 12, 2016, an Allen County Grand Jury indicted Mr. Bingham on one count of possession of cocaine in violation of Ohio Rev. Code § 2925.11(A) and (C)(4)(e), one count of illegal manufacture of drugs in violation of Ohio Rev. Code §§ 2925.04(A) and (C)(2), one count of having weapons while under disability in violation of Ohio Rev. Code §§ 2923.13(A)(3) and (B), and one count of possession of marihuana in violation of Ohio Rev. Code §§ 2925.11(A) and

(C)(3)(c). (State Court Record, ECF #7-1, PageID 77-80). On May 19, 2016, Mr. Bingham, through retained counsel, pled not guilty to all charges. (*Id.* at PageID 81-82).

On September 6, 2016, Mr. Bingham moved to suppress the evidence seized from his home, arguing the affidavit supporting the warrant contained false information. (*Id.* at PageID 83-90). After a hearing, the trial court overruled Mr. Bingham's motion to suppress. (*Id.* at PageID 108-13). On July 11, 2017, the trial court granted retained counsels' motions to withdraw from representing Mr. Bingham. (*Id.* at PageID 117-18). However, on September 1, 2017, Mr. Bingham, through one of his former retained attorneys, moved to suppress the evidence seized from his home for the same reason cited in his first motion to suppress. (*Id.* at PageID 120-28). On September 5, 2017, the trial court denied Mr. Bingham's motion for the same reasons his first motion to suppress was denied. (*Id.* at PageID 129). Mr. Bingham moved for reconsideration (*Id.* at PageID 130) and filed a supplemental motion to suppress with accompanying affidavits (*Id.* at PageID 132-35). On December 27, 2017, the trial court overruled Mr. Bingham's motion for reconsideration. (*Id.* at PageID 136-38). Separately, counsel and Mr. Bingham filed motions to withdraw counsel from representation, which the court granted. (*Id.* at PageID 139-45). On January 5, 2018, the trial court issued a *nunc pro tunc* order to correct the original order denying the motion to suppress. (*Id.* at PageID 146-48).

On January 19, 2018, Mr. Bingham's other former retained counsel entered his appearance on Mr. Bingham's behalf and moved to reopen the suppression issue to call defense witnesses. (*Id.* at PageID 150-57). After lengthy discussion, the trial court granted Mr. Bingham leave to file an amended motion to suppress. (*Id.* at PageID 158). Mr. Bingham filed the amended motion on March 2, 2018. (*Id.* at PageID 159-68). Mr. Bingham filed a separate motion to suppress a

statement he gave to police during the execution of the search warrant claiming he was not advised of his *Miranda* rights. (*Id.* at PageID 181-88). The court overruled the motion to suppress evidence because, after excision of the false statement from the affidavit supporting the search warrant, the affidavit contained sufficient probable cause to search 419 S. Collett because it "described conduct at the residence that was consistent with drug trafficking." (*Id.* at PageID 197-98). The court also overruled the motion to suppress Mr. Bingham's statement to the police during the execution of the search warrant, finding Mr. Bingham "was provided sufficient warnings to inform his[*sic*] of the substance of his constitutional rights and that he knowingly and voluntarily waived those rights and agreed to speak to the police." (*Id.* at PageID 200).

After briefing, the trial court also denied Mr. Bingham's motion to dismiss the indictment as voidable for lack of a sufficient number of grand jurors. (*See id.* at PageID 169-80).

On October 26, 2018, under a negotiated plea agreement, Mr. Bingham withdrew his not guilty pleas and entered pleas of no contest to the charges in the indictment. (*Id.* at PageID 201-04). As part of the plea agreement, the State agreed to not oppose a $250,000 appellate bond. (*Id.* at PageID 202). Before sentencing, Mr. Bingham moved to withdraw his pleas of no contest, noting the plea "was largely the result of an inability of the defense to secure a subpoena for the appearance of" a defense witness. (*Id.* at PageID 209). Mr. Bingham claimed the witness rented the property from him and was present at the house immediately before the execution of the search warrant. (*Id.*). With testimony from the witness, according to Mr. Bingham, the jury could reasonably "conclude that the person having superior possessory interest in the home was the more likely possessor of drugs found in that home, considering Mr. Bingham's recent arrival to the house right before the execution of the search warrant and the lack of any controlled buys from

4

Mr. Bingham." (*Id.*). Mr. Bingham's attempts to serve the subpoena for the witness, both through the Allen County Sheriff and through a private investigator, failed. (*Id.*). Mr. Bingham averred he later discovered the private investigator was "secretly" working for the Allen County Sheriff "at the time he purported to provide independent services to Mr. Bingham for the defense of his case[,]" and "[t]his invasion of the defense team manifested in a failure to serve the subpoena upon [the witness], which induced the plea." (*Id.*). After a hearing during which the witness, the private investigator, and Mr. Bingham testified, the trial court denied his motion to withdraw his no contest pleas. (*Id.* at PageID 211-18).

At the sentencing hearing on December 20, 2018, the trial court merged Counts 1 and 2, possession of cocaine and illegal manufacture of drugs, respectively, and the State elected to proceed on count 1. (*Id.* at Page 219-220). The trial court sentenced Mr. Bingham on Counts 1, 3, and 4 to an aggregate term of 12 years and set an appeal bond in the amount of $250,000. (*Id.* at PageID 221-23).

**Direct Appeal**

On December 27, 2018, Mr. Bingham, through counsel, appealed the judgment of conviction and sentence and the trial court's denial of motions to suppress evidence, dismiss the indictment, and withdraw the pleas to the Third District. (ECF #7-1 at PageID 238). He raised the following assignments of error in his appellate brief:

1. The Trial Court should have dismissed the Indictment for insufficient number of jurors because Crim. R. 6(A) is unconstitutional, in violation of Article I, Section 10, of the Ohio Constitution and R.C. § 2939.02.

2. The Trial Court erred by not suppressing the fruits of the tainted search warrant.

3. The Trial Court erred by denying Mr. Bingham's Motion to Withdraw Plea.

5

(*Id.* at PageID 261). The State filed a responsive brief. (*Id.* at PageID 322-48). At Mr. Bingham's request, appellate counsel filed a motion to withdraw from representation; the Third District granted the motion. (*Id.* at PageID 373-76). After Mr. Bingham, *pro se,* filed his Reply Brief (*Id.* at PageID 377-86), the Third District affirmed the judgment of the trial court on August 19, 2019. (*Id.* at PageID 387-425; *see also State v. Bingham*, 141 N.E.3d at 635).

On January 30, 2020, Mr. Bingham moved for leave to file a delayed application for reconsideration of the Third District's decision and *en banc* consideration (ECF #7-1 at PageID 426-30). On February 24, 2020, the Third District denied the application. (*Id.* at PageID 431-32).

On June 19, 2020, Mr. Bingham, through new counsel, appealed the Third District's judgment affirming conviction and sentence and the denial of his application for reconsideration to the Supreme Court of Ohio and filed a motion for leave to file out of time. (*Id.* at PageID 433-52). Therein, he asserted the following propositions of law in support of jurisdiction:

1.    A defendant in a criminal case is deprived of his constitutional protections under the Fourth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution where law enforcement proceeds on a search warrant containing material falsehoods and lacking probable cause.

2.    A defendant is denied his constitutionally protected rights guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution where the trial court denies his presentence Motion to Withdraw Plea filed upon the location of a defense witness after diligent efforts.

(*See id.* at PageID 440).

On July 2, 2020, the Supreme Court of Ohio denied Mr. Bingham's motion for leave to file out of time and dismissed the appeal. (*Id.* at 510; *see also State v. Bingham*, 148 N.E. 3d 572 (Ohio 2020) (table)). Mr. Bingham filed a motion for reconsideration (ECF #7-1 at PageID 511-

14), which the Supreme Court of Ohio also denied. (*Id.* at 515; *see also State v. Bingham,* 151 N.E. 3d 645 (Ohio Sept. 1, 2020) (table)).

**Post-Sentence Motions to Withdraw No Contest Pleas**

During the pendency of the direct appeal to the Third District, but before Mr. Bingham's appellate counsel was withdrawn from the case, Mr. Bingham, through counsel, filed a second motion to withdraw his no contest pleas in the trial court on February 6, 2019. (ECF #7-1 at PageID 224-27). On February 12, 2019, the trial court determined it lacked jurisdiction to decide the motion while direct appeal was pending and so held the motion in abeyance. (*Id.* at PageID 236-37). On August 28, 2019, Mr. Bingham appeared before the trial court on a "show-cause" order to demonstrate why the sentence should not be executed. (*See id.* at PageID 534). The trial court determined Mr. Bingham did not show cause and executed the prison sentence. (*Id.*). On August 29, 2019, the trial court denied Mr. Bingham's second motion to withdraw the no contest pleas. (*Id.* at PageID 516-19). On September 4, 2019, the trial court denied Mr. Bingham's motion to reinstate the appeal bond. (*Id.* at 534).

On October 22, 2019, Mr. Bingham, *pro se*, filed a third motion to withdraw his no contest pleas. (*Id.* at PageID 520-26). After the State filed its responsive brief (*See id.* at PageID 529-32), the trial court denied the motion. (*Id.* at PageID 533-38). Mr. Bingham appealed the decision to the Third District and presented the following assignment of error:

> The trial court erred by not granting the motion to withdraw plea as it pertained to the state's breach of the contract.

(*Id.* at PageID 553). After briefing from the parties (*see id.* at PageID 567-627), the Third District overruled Mr. Bingham's assignment of error and affirmed trial court's judgment. (*Id.* at PageID 629-35).

**Petition for Post-Conviction Relief**

On March 13, 2020, Mr. Bingham filed a petition to vacate or set aside the judgment of

conviction or sentence with the trial court. (ECF #7-1 at PageID 636-40). He averred as follows:

1.  Petitioner's right to the effective assistance of counsel was violated when counsel failed to act in substantive compliance to the Sixth Amendment of the U.S. Constitution and the Constitution of Ohio.

    Counsel was hired to represent petitioner against those charges listed herein. However, counsel failed put the State's theory of these offenses to an adversarial process when he failed to adequately challenge the State's evidence on numerous fronts. Most notably counsel's failure to contact and interview witnesses who could have challenged and cast doubt upon the State's case in chief. These witnesses were made known to counsel prior to trial and was relevant to petitioner's defense at all times. (See attached Affidavits).

2.  Counsel failed to properly and vigorously challenge the information, contained in the affidavit used to secure the warrant facilitating the arrest and conviction of petitioner. Had counsel done so the court would have been better equipped to make those findings that would have resulted in the acquittal of petitioner. The facts would establish that the affidavit was relied upon but unsupported by any credible evidence and was wholly fabricated with prior knowledge and design calculated to mislead and convince the court of petitioner's guilt without due process of law and intended to deprive petitioner of same.

3.  Counsel failed to conduct any pre-trial investigation that would have aided petitioner in establishing that evidence which would have supported petitioner's claim of innocence. Counsel's failures were cumulative and resulted in petitioner's entering a "no contest" plea. Had counsel conducted any pretrial investigation, including, but not limited to interviewing witnesses, petitioner's innocence would have been established beyond a reasonable doubt. The evidence presented by the State was predicated upon deception, false and misleading statements by its witnesses.

(*See id.* at PageID 637-38) (cleaned up).

On March 17, 2020, the trial court denied Mr. Bingham's petition and accompanying motions for appointment of counsel (*Id.* at PageID 645-47) and expert assistance (*Id.* at PageID 648-50). (*Id.* at PageID 651-56). Mr. Bingham did not appeal this ruling.

### FEDERAL HABEAS CORPUS

On August 19, 2020, Mr. Bingham filed this *pro se* petition, asserting the following grounds for relief:

**Ground One**. Petitioner's Fourth Amendment right against unreasonable searches and seizures was violated when law enforcement proceeds on a warrant containing material falsehoods and lacks probable cause.

**Supporting Facts**: In Mr. Bingham's case, the State conceded that search warrant affidavit contained material falsehoods. The confidential informant purchased drugs from another individual, not Mr. Bingham, and the inclusion of Mr. Bingham was not truthful.

The confidential informant testified that he did not wear a recording device and went to the location to purchase drugs from, and did in fact, purchase drugs from Mr. Joel Pea. Mr. Pea testified that he did not sell drugs and was in Columbus, Ohio on the date in question. The conflicting testimony calls into question that balance of the search warrant affidavit as it would require one to pick and choose facts from four different individuals, who cannot all be telling the truth.

**Ground Two**. Due process is violated when the trial court denied a pre-sentence motion to withdraw plea on grounds supported by the Fifth, Sixth, and Fourteenth Amendments.

**Supporting Facts**: In this case Mr. Bingham took steps to obtain defense witness, Jeremy Calhoun, including securing an investigator to serve a subpoena on the witness after failed attempts by the Allen County Sheriff. The inability to secure this witness induced Mr. Bingham to enter a plea. Mr. Bingham later discovered the investigator he hired was an employee of the Allen County Sheriff's Department and moved to withdraw his plea. Mr. Bingham's request was made in advance of sentencing. The voluntariness of Mr. Bingham's plea, and the advice of his attorney regarding the plea is problematic in light of the new information that the independent investigator Mr. Bingham hired was actually employed by the Sheriff's Office where his case originated out of.

(ECF #1 at PageID 6, 8; ECF #1-2 at PageID 21-23) (citations omitted).

STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs Mr. Bingham's petition for writ of habeas corpus. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA recognizes that "[s]tate courts are adequate forums for the vindication of federal rights" and therefore acts as a "formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). It "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (internal citation and quotation omitted). Accordingly, an application for habeas corpus cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d).

Habeas courts review the last explained state-court judgment on the federal claim at issue. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991). For purposes of § 2254(d)(1), clearly established federal law "is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). It includes "the holdings, as opposed to dicta, of [Supreme Court] decisions." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

A state court decision is contrary to Supreme Court precedent if the state court arrives at a conclusion opposite that reached by the Court on a question of law or if the state court decides a

case differently than the Court has decided on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405; *White v. Mitchell*, 431 F.3d 517, 523 (6th Cir. 2005), *cert. denied*, 549 U.S. 1047 (2006). The word "contrary" means "diametrically different, opposite in character or nature, or mutually opposed." *Williams*, 529 U.S. at 405. A state court does not act contrary to clearly established law when the precedent of the Supreme Court is ambiguous or nonexistent. *See, e.g.*, *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state court decision involves an unreasonable application of the Court's precedent if the state court identifies the correct governing legal rule from the Court's cases but unreasonably applies it to the facts of the state prisoner's case, or if the state court either unreasonably extends a legal principle from the Court's precedent to a new context where it should not be applied or unreasonably refuses to extend that principle in a new context where it should apply. *Williams*, 529 U.S. at 407. The appropriate measure of whether a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Id.* at 409-11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000), *cert. denied*, 531 U.S. 1089 (2001). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Under § 2254(d)(2), state court factual determinations stand unless they are objectively unreasonable in light of the evidence presented in state court. *Harrington*, 562 U.S. at 100. The Supreme Court has repeatedly emphasized "a state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion." *Burt*, 571 U.S. at 18.

Under federal law, "a determination of a factual issue made by a State court shall be presumed to be correct. [Petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2554(e)(1). Comity principles also require federal courts to defer to a state's judgment on issues of state substantive and procedural law. *Murray v. Carrier*, 477 U.S. 478, 491 (1986); *Engle v. Isaac*, 456 U.S. 107, 128-129 (1982). Federal courts must accept a state court's interpretation of its statutes and rules of practice. *Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986).

The standard is intended to be difficult to meet and reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Harrington*, 562 U.S. at 102-03; *see also Brown v. Davenport*, 142 S. Ct. 1510, 1524 (2022) (describing habeas as an "extraordinary remedy, reserved for only extreme malfunctions in the state criminal justice system and different in kind from providing relief on direct appeal") (cleaned up). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Id*. at 103.

When a properly presented federal constitutional claim was not adjudicated on the merits in the state courts, the reviewing federal court must apply the pre-AEDPA standard, reviewing *de novo* questions of law and mixed questions of law and fact. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007).

PROCEDURAL BARRIERS TO FEDERAL HABEAS REVIEW

Before a federal court may review a petitioner's habeas claims on the merits, the petitioner must overcome several procedural barriers. These barriers, including exhaustion of state remedies and procedural default, limit a petitioner's access to review on the merits of a constitutional claim. *Daniels v. United States*, 532 U.S. 374, 381 (2001). Put simply, federal courts may review federal claims that were evaluated on the merits by a state court. Claims there were not evaluated on the merits, either because they were never presented to the state courts (*i.e.*, they are unexhausted) or because they were not properly presented to the state courts (*i.e.*, they are procedurally defaulted), are generally not cognizable on federal habeas review. *Bonnell v. Mitchel,* 301 F. Supp. 2d 698, 722 (N.D. Ohio Feb. 4, 2004).

**Exhaustion of Available State Court Remedies**. A court may not grant a petition for habeas corpus unless it appears the petitioner has exhausted available state court remedies, state corrective process is unavailable, or circumstances exist rendering such state process ineffective to protect the petitioner's rights. 28 U.S.C. § 2254(b)(1). Typically, the exhaustion requirement is satisfied when the petitioner fairly presents all claims to the highest court in the state in where petitioner was convicted, giving the state a full and fair opportunity to rule on the petitioner's claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). A claim is fairly presented when both the factual and legal basis for the claim has been introduced to the state courts. *Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2000). A failure to exhaust applies only where state remedies remain "available at the time of the federal petition." *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). In contrast, where state court remedies are no longer available, procedural default (discussed more fully below), rather than exhaustion, applies. *Id.*

**Procedural Default**. Absent a petitioner demonstrating either cause and prejudice or that failure to review the claim would result in a fundamental miscarriage of justice (discussed below), a federal court will not consider the merits of procedurally defaulted claims. *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)).

There are two avenues by which a petitioner's claim may be procedurally defaulted. *Id.* First, procedural default occurs if a petitioner "fails to comply with state procedural rules in presenting his claim to the appropriate state court." *Id.* To determine whether a petitioner's failure to comply with a state procedural rule bars review of his habeas claims, courts in the Sixth Circuit perform a four-pronged analysis: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Second, a claim may be procedurally defaulted when the petitioner fails to raise it in state court and pursue it through the state's "ordinary appellate review procedures." *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848 (1991)); *see also Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."). As addressed above, "[i]f, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id.* Although the exhaustion requirement is satisfied because there are no

14

longer any state remedies available to the petitioner, *see Coleman v. Thompson*, 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims barring federal court review. *Williams,* 460 F.3d at 806; *Shinn v. Ramirez,* 142 S. Ct. 1718 (2022) ("When [a state prisoner] has failed to [first present that claim to the state court in accordance with state procedures], and the state court would dismiss the claim on that basis, the claim is 'procedurally defaulted.'").

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 749. Habeas petitioners cannot rely on conclusory assertions of cause and prejudice to overcome procedural default; they must present affirmative evidence or argument as to the precise cause and prejudice produced. *See Tinsley v. Million*, 399 F.3d 796, 806 (6th Cir. 2005) (citing *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 452 (6th Cir. 2003) ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at a developed argumentation, are deemed waived.") (quotation omitted)). A finding of cause and prejudice does not entitle a petitioner to habeas relief; it only allows a federal court to consider the merits of a claim that otherwise would have been procedurally defaulted. *See Martinez v. Ryan,* 566 U.S. 1, 10 (2012); *see also Coleman*, 501 U.S. at 750.

A showing of cause for the default requires more than the mere proffer of an excuse. Rather, "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray*, 477 U.S. at 488; *see also Wogenstahl v. Mitchell*,

15

668 F.3d 307, 321 (6th Cir. 2012). Furthermore, neither a petitioner's pro se status nor his ignorance of the law and procedural filing requirements are enough to establish cause to overcome procedural default. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004). Futility cannot constitute cause for the procedural default of a claim for failure to raise a claim on direct review if it means simply that a claim was "unacceptable to that particular court at that particular time." *Engle v. Isaac*, 456 U.S. 107, 130, n.35 (1982).

To demonstrate prejudice sufficient to overcome procedural default, a petitioner must show more than mere errors in the state trial creating a possibility of prejudice; rather, the petitioner must show that the alleged errors worked to the petitioner's actual and substantial disadvantage, infecting the entire trial with error of constitutional dimensions. There is no prejudice where the petitioner does not show a reasonable probability of a different verdict. *Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003).

Ineffective assistance of counsel may serve as cause to excuse a procedural default, but the ineffective assistance claim itself must not be procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). Attorney neglect, ignorance, or inadvertence, however, does not constitute cause to excuse a procedural default unless counsel's performance was constitutionally deficient under the test enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984). *Coleman*, 501 U.S. at 752-755; *Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994).

Alternatively, a petitioner may overcome procedural default by showing that a fundamental miscarriage of justice will occur if the claims are not considered. *Coleman*, 501 U.S. at 750; *Murray*, 477 U.S. at 495. A fundamental miscarriage of justice occurs in the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent."

*Murray*, 477 U.S. at 495-96; *see also Schlup v. Delo*, 513 U.S. 298, 327 (1995). Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). A valid actual innocence claim must be supported by new reliable evidence, such as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence, that was not presented at trial that is so strong a court cannot have confidence in the outcome of the petitioner's trial. *Schlup*, 513 U.S. at 324. In other words, a "petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 327.

**State Law Claims Not Cognizable on Federal Habeas Review.** The District Court will not have jurisdiction over a petitioner's claims for purposes of habeas corpus review if the claims do not "challenge the legality of his custody" based on a "violation of the Constitution or law or treaties of the United States." 28 U.S.C. § 2254(a). Indeed, "[t]he writ of habeas corpus is not available to remedy errors of only state law." *Smith v. Morgan*, 371 F. App'x 575, 582 (6th Cir. 2010) (citing 28 U.S.C. § 2254(a)); *see also Norris v. Schotten*, 146 F.3d 314, 328 (6th Cir. 1998) ("A claim based solely on an error of state law is not redressable through the federal habeas process."). Moreover, merely asserting that a state law error violates the Federal Constitution is not sufficient to justify jurisdiction. *See Wilson v. Corcoran*, 562 U.S. 1, 5 (2010); *see also Rivera v. Illinois*, 556 U.S. 148, 158 (2009) ("The Due Process Clause . . . safeguards not the meticulous observance of state procedural prescriptions, but the fundamental elements of fairness in a criminal trial.") (internal quotation omitted); *see also Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982) ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (internal citation omitted).

Nonetheless, habeas relief may be available if an alleged error of state law subjected the petitioner to a "fundamentally unfair" criminal process. *Williams*, 460 F.3d at 816. "[T]he category of infractions that violate fundamental fairness is defined very narrowly," and includes only state rulings that "offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Bey v. Bagley*, 500 F.3d 514, 521 (6th Cir. 2007) (cleaned up). "A state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)); *see also Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (stating that a federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure). The habeas petitioner bears the burden of showing "the principle of procedure violated by the rule (and allegedly required by due process)" is fundamental. *Bey*, 500 F.3d at 521.

DISCUSSION AND ANALYSIS

## I.    Ground One

In Ground One, Mr. Bingham asserts his Fourth Amendment right to be free from unreasonable searches and seizures was violated because the affidavit supporting the search warrant contained material falsehoods that, when excised from the affidavit, rendered the search warrant lacking sufficient probable cause. (ECF #9 at PageID 1002).

Federal habeas corpus review of a state prisoner's Fourth Amendment claim is generally prohibited under *Stone v. Powell* where petitioner received "the opportunity for full and fair consideration" of that claim in state court. 428 U.S. 465, 481-82 (1976). This is because the key purpose of federal habeas corpus is to free innocent prisoners, and whether an investigation

18

violated the Fourth Amendment has no bearing on whether the defendant is guilty. *Id.* at 490. Further, exclusion is not a personal right guaranteed by the Constitution, but a deterrent prescribed by the courts. *Id.* at 485; *see also Good v. Berghuis,* 729 F.3d 636, 637 (6th Cir. 2013).

The "opportunity for full and fair consideration" means an available avenue for the prisoner to present his claim to the state courts, "not an inquiry into the adequacy of the procedure actually used to resolve the particular claim." *Good,* 729 F.3 at 639. Accordingly, "[i]n the absence of a sham proceeding, there is no need to ask whether the state court conducted an evidentiary hearing or to inquire otherwise into the rigor of the state judiciary's procedures for resolving the claims." *Id.*

In *Riley v. Gray,* 674 F.2d 522 (6th Cir. 1982), the Sixth Circuit set forth two inquiries a court must perform when determining whether a petitioner may raise a Fourth Amendment claim on federal habeas review: first, the court must determine whether the state procedural mechanism presents the opportunity to raise a Fourth Amendment claim; and second, the court must determine whether presentation of the claim was frustrated because of a failure of that mechanism. *Id.* at 526. The Sixth Circuit has held that Ohio, by providing for the filing of a pretrial motion to suppress and the opportunity to take a direct appeal from any ruling denying a motion to suppress, has a state procedural mechanism in place that presents the opportunity for full and fair litigation of a Fourth Amendment claim. *Id.* As to the second inquiry, Mr. Bingham presented his motion to suppress in the trial court and the court denied it after hearing testimony and taking evidence. Mr. Bingham then presented the claim to the state appellate court, and the appellate court rejected the claim. As was the case in *Good,* this suffices to preclude review of the claim through a habeas corpus petition under *Stone v. Powell. See Good,* 729 F.3d at 640; *see also Loza v. Mitchell,* 705 F.

Supp. 2d 773, 860 (S.D. Ohio Mar. 31, 2010) (holding that defendant received a full and fair opportunity to litigate his Fourth Amendment claim where the trial court heard and denied his motion to suppress and the defendant subsequently raised the same Fourth Amendment claim on direct appeal); *Johnson v. Eppinger*, 1:19 CV 984, 2020 WL 8771326, *14 (N.D. Ohio June 1, 2020), *report and recommendation adopted*, 2021 WL 861509 (N.D. Ohio Mar. 8, 2021) (concluding that habeas relief on a Fourth Amendment claim is unavailable where the trial court conducted a suppression hearing and ruled against the petitioner and the petitioner further argued the claim on direct appeal); *Long v. Watson*, 3:22-cv-503, 2022 WL 15522935, at *1 (N.D. Ohio Oct. 27, 2022) (same).

Mr. Bingham argues *Stone* does not preclude review of his Fourth Amendment claim because he was not provided with the opportunity for full and fair litigation in the State of Ohio "since both the Third District Court of Appeals and the Ohio Supreme Court denied his requests for Leave to File Delayed Application for Reconsideration and En Banc Consideration, and request for leave to file a delayed memorandum in support of jurisdiction." (ECF #9 at PageID 1006). Mr. Bingham has not identified any Supreme Court holding establishing that a petitioner is denied the opportunity for full and fair consideration of his claim because he was denied reconsideration of the appellate court's reasoned rejection of the claim. Under relevant precedent, Mr. Bingham's presentation of his Fourth Amendment claim to the trial court and on direct appeal constitutes the opportunity for full and fair consideration, and suffices to preclude this Court's review of the claim through a habeas corpus petition.

For the foregoing reason, I recommend the District Court deny Ground One as not cognizable on federal habeas review.

## II.     Ground Two

In Ground Two, Mr. Bingham argues the trial court's denial of his presentence motion to withdraw his no contest pleas violated his right to due process. In response, the State claims Mr. Bingham procedurally defaulted the claim and, in any event, it is meritless. (ECF #7 at PageID 58-61).

### A.     Procedural Default

As described above, one avenue by which a petitioner procedurally defaults a claim is failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Lundgren,* 440 F.3d at 763. Under the Supreme Court of Ohio's procedural rules, the court has jurisdiction over timely appeals made within 45 days of the state appellate court's decision. *See* Ohio S. Ct. Prac. R. 6.01(A)(1), 7.01(A)(1). Although the Supreme Court of Ohio may, in its discretion, take jurisdiction over untimely appeals upon motion for leave to file a delayed appeal under Ohio S. Ct. Prac. R. 7.01(A)(4), where, as here, the delayed appeal is not allowed, the Sixth Circuit has held that even an unexplained decision denying leave to file an untimely appeal is presumed to enforce any applicable procedural bar. As the Sixth Circuit explained:

> This case turns on whether the Ohio Supreme Court entry denying [the defendant's] motion for leave to file a delayed appeal constitutes a procedural ruling sufficient to bar federal court review of [the defendant's] habeas corpus petition. Upon examination of the Ohio Supreme Court Rules, we conclude that it does. The Ohio Supreme Court Rules require a motion for a delayed appeal to state "the date of entry of the judgment being appealed and adequate reasons for the delay." Ohio Sup.Ct. R. II, Section 2(A)(4)(a). In addition, the motion must be accompanied by a supporting affidavit and a "copy of the decision being appealed." *Id.* A motion for a delayed appeal is not required to contain the actual claims and supporting arguments sought to be presented on appeal. *Id.* Instead, only when "the Supreme Court grants a motion for delayed appeal," is the appellant required to "file a memorandum in support of jurisdiction." Ohio Sup.Ct. R. II, Section 2(A)(4)(c). Thus, the applicable Ohio court rules indicate that the denial of a motion for a delayed appeal is a procedural ruling, not a ruling on the merits.

*Bonilla v. Hurley,* 370 F.3d 494, 497 (6th Cir. 2004); *accord Smith v. State of Ohio Dept. of Rehab. and Corr.,* 463 F.3d 426, 431-432 (6th Cir. 2006); *Garcia v. Eppinger,* No. 1:17CV1090, 2020 WL 3037090, at *16 (N.D. Ohio May 11, 2020), *report and recommendation adopted,* 2020 WL 3036028 (N.D. Ohio June 5, 2020). Moreover, when a state court is silent as to the reasons for denying relief, as is the case here, we "assume[] that the state court would have enforced any applicable procedural bar." *Id.*

I find Mr. Bingham's failure to file a timely appeal from the Third District's August 19, 2019 decision to the Supreme Court of Ohio, coupled with the Supreme Court of Ohio's denial of the motion for delayed appeal, resulted in a procedural default. Therefore, Ground Two is procedurally defaulted unless Mr. Bingham "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750. A petitioner must show that "some objective factor external to the defense" caused his failure to comply with the state's procedural rule, *Murray,* 477 U.S. at 488, and if the petitioner fails to make this showing, a reviewing court need not consider the prejudice prong. *Smith v. Murray,* 477 U.S. 527, 533-34 (1986).

In his motion for leave to file a delayed appeal in the Supreme Court of Ohio, Mr. Bingham claims that being taken into custody in August 2019 "unnecessarily delayed his requests to the Third District for Reconsideration and En Banc consideration," presumably under Ohio App. R. 26(A). (ECF #7-1 at PageID 436). He argues this delay and the COVID-19 pandemic, which gripped the nation around the time the Third District issued the denial of his *untimely* motion for reconsideration (February 24, 2020), delayed his appeal to the Supreme Court of Ohio.

22

(*Id.* at PageID 437). He also cites the Supreme Court of Ohio's order on March 27, 2020, tolling

time requirements. (*Id.* at PageID 436); *see In re Tolling of Time Requirements Imposed by Rules*

*Promulgated by Supreme Ct. & Use of Tech.*, 141 N.E.3d 974 (2020) (table).

It appears Mr. Bingham believes his deadline for filing a notice of appeal to the Supreme

Court of Ohio is calculated from February 24, 2020, the date of the denial of the untimely motion

for reconsideration. (*See id.* at PageID 436). Not so. Ohio App. R. 26(A)(1) allows parties to seek

reconsideration of an appellate court decision no later than ten days after the clerk has mailed the

judgment or order to the parties and made a note of the mailing on the docket. In turn, under the

Supreme Court of Ohio's Rules of Practice, "[w]hen a party timely files an application for

reconsideration in the court of appeals pursuant to App. R. 26(A)(1), the time for filing a notice of

appeal from the court of appeals entry of judgment shall be tolled." Ohio S. Ct. Prac. R.

7.01(A)(5)(a). Because Mr. Bingham's motion for reconsideration at the appellate court level was

untimely, his time for filing a notice of appeal of the Third District's affirmance of the trial court's

judgment, dated August 19, 2019, to the Supreme Court of Ohio was not tolled. Therefore, Mr.

Bingham's notice of appeal to the Supreme Court of Ohio was due no later than October 3, 2019,

well before COVID-19 arose and several months before the Supreme Court of Ohio's pandemic-

related tolling provisions took effect. Those tolling provisions simply do not apply to Mr.

Bingham. Nor does the fact of Mr. Bingham's incarceration establish sufficient cause to excuse the

procedural default. *Bonilla,* 370 F.3d at 498. As Mr. Bingham has not established cause to excuse

the default, the court need not consider the prejudice prong. *Smith v. Murray*, 477 U.S. at 533-34.

Mr. Bingham next asserts failure to consider the merits of Ground Two would result in a

fundamental miscarriage of justice. (ECF #9 at PageID 1008-09). Described above, a prisoner may

establish a fundamental miscarriage of justice by showing that a constitutional error probably resulted in the conviction of one who is actually innocent. *Murray*, 477 U.S. at 495-96; *see also Schlup v. Delo*, 513 U.S. 298, 327 (1995). Such a claim must be supported by new reliable evidence that was not presented at trial that is so strong a court cannot have confidence in the outcome of the petitioner's trial. *Schlup*, 513 U.S. at 324. Mr. Bingham has not supported his claim with any new evidence and, therefore, he has not shown a fundamental miscarriage of justice will occur if this court does not review the merits of his claim.

For these reasons, I recommend the district court **DISMISS** Ground Two as procedurally defaulted.

### B.  Merits Review

Federal habeas relief is not available "based solely on an error of state law." *Norris,* 146 F.3d at 328 (citing *Estelle,* 502 U.S. at 67-68). Whether a trial court erred in denying a petitioner's motion to withdraw his plea is a question of state law, and therefore not a cognizable ground for habeas relief. *Goodwin v. Buchanan,* No. 5:19 CV 888, 2022 WL 1152782, at *1 (N.D. Ohio Apr. 19, 2022). Moreover, there is no federal constitutional right to withdraw a plea. *See Jones v. Sheldon,* No. 4:12-CV-01511, 2014 WL 1493137, at *10 (N.D. Ohio Apr. 11, 2014). However, if a state court ruling was so fundamentally unfair so as to violate due process, habeas relief may be available. *Seymour v. Walker,* 224 F.3d 542, 552 (6th Cir. 2000); *see also Montana v. Egelhof,* 518 U.S. 37, 43 (1996).

Whether a state court's denial of a motion to withdraw a plea implicates constitutional concerns turns on whether the plea was entered knowingly and voluntarily. *North Carolina v. Alford,* 400 U.S. 25, 31 (1970). The voluntariness of the plea is determined in light of all relevant

circumstances surrounding the plea. *Robinson v. Burt,* No. 2:16-CV-13949, 2017 WL 2832553, at *3 (E.D. Mich. June 30, 2017) (citing *Brady v. United States,* 397 U.S. 742, 749 (1970)). When a federal habeas petitioner challenges his no contest plea, the state generally satisfies its burden by producing a transcript of the state court proceedings showing the plea was made voluntarily. *Garcia v. Johnson,* 991 F.2d 324, 326 (6th Cir 1993). A state court's factual finding that the plea was proper is accorded a presumption of correctness unless the transcript is inadequate to show that the plea was voluntary and intelligent. *Blackledge v. Allison,* 431 U.S. 63, 74 (1977).

Mr. Bingham maintains that the voluntariness of his plea is in question because he would not have entered the plea if he had been aware of the "conflict of interest" between the private investigator and the Allen County Sheriff's Office. (ECF #1-2 at PageID 23). The Third District addressed the issue as follows:

> [¶ 40] In his third assignment of error, Bingham argues that the trial court erred by denying his presentence motion to withdraw his no contest pleas. In particular, Bingham argues that his decision to enter his no contest pleas "was largely the result of an inability * * * to secure a subpoena for the appearance of Jeremy Calhoun as a defense witness." According to Bingham, Calhoun was a tenant of 419 S. Collett when the search warrant was obtained, and he was present at the home immediately before the search warrant was executed. Bingham argues that if he had been able to secure the testimony of Calhoun at trial, "[i]t would have been reasonable for a jury to conclude that [Calhoun] * * * was the more likely possessor of drug found in [419 S. Collett]." Furthermore, Bingham notes that in an effort to serve Calhoun with a subpoena, he retained the services of a private investigator, Daren Johnson. However, Bingham later learned that Johnson "was secretly working as a Deputy Sheriff at the time." Bingham contends that Johnson's involvement, which he characterizes as an "invasion of the defense team," "manifested in a failure to serve the subpoena upon Calhoun, which induced the plea."

> [¶ 41] Crim. R. 32.1 provides a defendant may file a presentence motion to withdraw a no contest plea. Generally, "presentence motion[s] to withdraw * * * [no contest] pleas[s] should be freely and liberally granted." However, "[a] defendant does not have an absolute right to withdraw a [no contest] plea prior to sentencing." As a result, a "trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea."

[¶ 42] When reviewing a trial court's denial of a presentence motion to withdraw a no contest plea, this court considers several factors, including: (1) whether the withdrawal will prejudice the prosecution; (2) the representation afforded to the defendant by counsel; (3) the extent of the hearing held pursuant to Crim R. 11; (4) the extent of the hearing on the motion to withdraw the plea; (5) whether the trial court gave full and fair consideration to the motion; (6) whether the timing of the motion was reasonable; (7) the stated reasons for the motion; (8) whether the defendant understood the nature of the charges and potential sentences; and (9) whether the accused was perhaps not guilty or had a complete defense to the charges. "None of the factors is determinative on its own and there may be numerous additional aspects 'weighed' in each case."

[¶ 43] Ultimately, "[t]he decision to grant or deny a presentence motion to withdraw a [no contest] plea is within the sound discretion of the trial court." "Therefore, appellate review of a trial court's decision to deny a presentence motion to withdraw a [no contest] plea is limited to whether the trial court abused its discretion." An abuse of discretion is more than a mere error in judgment; it suggests that a decision is unreasonable, arbitrary, or unconscionable. "When applying this standard, a reviewing court may not simply substitute its judgment for that of the trial court."

[¶ 44] We begin by addressing the factors that weigh in Bingham's favor. With respect to the first and sixth factors, the trial court found that "[s]ince the motion was filed a month after the plea, * * * it was timely and the State would not be prejudiced if the plea is withdrawn." We agree. First, little more than one month elapsed between when Bingham entered his pleas and when he sought to withdraw his pleas. Furthermore, Bingham filed his motion to withdraw more than three weeks before his sentencing hearing was scheduled to take place. Thus, Bingham's motion to withdraw was filed within a reasonable time.

[¶ 45] In addition, the record does not establish that the State would have been prejudiced had Bingham been permitted to withdraw his no contest pleas. "Prejudice will not be presumed when it is not articulated." Here, the State has made no effort to identify how the withdrawal of Bingham's plea would have prejudiced it. There is no suggestion in the record that the State's evidence against Bingham became unavailable or unusable during the one-month delay between Bingham's plea and the filing of his motion to withdraw. At most, allowing Bingham to withdraw his no contest pleas would have subjected the State "'only to the inconvenience of having to prosecute [the] case,'" and the State's inconvenience is not a "legitimate consideration when determining whether a defendant may withdraw his [no contest] pleas prior to sentencing." Therefore, because Bingham's motion to withdraw was made within a reasonable time and because the State failed to demonstrate actual, articulated prejudice, the first and sixth factors weigh in Bingham's favor.

[¶ 46] Yet, although the first and sixth factors weigh in Bingham's favor, we conclude that upon examining the remaining seven factors and weighing them against the first and sixth factors, the trial court did not abuse its discretion by denying Bingham's presentence motion to withdraw his no contest pleas.

[¶ 47] Regarding the second factor, the trial court found that Bingham "was represented by the same competent attorney at the plea hearing and at the hearing on the motion to withdraw the plea. Counsel was experienced and raised appropriate issues in the motion to withdraw." Nothing in the record calls these findings into question. The record reflects that Bingham was represented by counsel at his change-of-plea hearing, where he helped to ensure that Bingham's pleas were knowing, voluntary, and intelligent. Furthermore, Bingham was represented by the same counsel at the hearing on his motion to withdraw. There, Bingham's trial counsel effectively examined Bingham and other witnesses and otherwise vigorously advocated for Bingham's stated grounds for withdrawal. Nevertheless, Bingham argues that the "representation afforded to the defendant by counsel was negatively affected by the secret status of a defense investigator as a Deputy Sheriff, creating a conflict of interest." However, other than claiming that Johnson's involvement created an appearance of impropriety, Bingham fails to demonstrate how Johnson's previously unknown affiliation with the Allen County Sheriff's Office adversely affected the quality of his legal representation. In fact, at the hearing on Bingham's motion to withdraw, Bingham's trial counsel acknowledged that he had "not had any indications of [Johnson] reviewing anything" with respect to Bingham's defense and that he did not "in any way believe that there was anything nefarious about what [Johnson] was doing." Thus, Bingham's trial counsel was not of the view that Johnson actually impaired Bingham's defense. Accordingly, the second factor weighs against Bingham.

[¶ 48] Likewise, the third and eighth factors do not weigh in Bingham's favor. Bingham argues that while "the extent of the hearing held pursuant to Crim. R. 11 was sufficient for most cases," because neither he nor the trial court were aware of Johnson's association with the Sheriff's Office, the "matter [of Johnson's associations] was not discussed," thereby rendering his Crim. R. 11 plea colloquy inadequate. In addition, he argues that while he "understood the nature of the charges and potential sentences, the issue in this case was triability and the invasion of the defense team secretly by [Johnson]." Bingham's arguments are without merit. First, even if the trial court had been aware of Johnson's relationship with the Sheriff's Office, the trial court would not have been required to disclose this information during the plea colloquy because such information is not among any of the types of information that Crim. R. 11 requires trial courts to discuss with defendants prior to accepting their pleas. Moreover, as Bingham concedes, the trial court conducted a comprehensive Crim. R. 11 plea colloquy. The trial court ensured that Bingham understood the effect of entering his no contest pleas, the nature of the charges against him, the maximum penalties the trial court could impose, and

the constitutional rights he was waiving by pleading no contest. The trial court also confirmed that Bingham was not intoxicated or mentally impaired at the time he entered his pleas and that he was not coerced into entering the pleas. Finally, as discussed above, Bingham's trial counsel conceded that Johnson did not meaningfully participate in conducting Bingham's defense and the record does not suggest otherwise. Therefore, because the trial court conducted a thorough Crim. R. 11 plea colloquy, which included a discussion sufficient to ensure that Bingham understood the nature of the charges against him and the potential penalties, the third and eighth factors do not weigh in Bingham's favor.

[¶ 49] Furthermore, we find that the fourth and fifth factors do not weigh in Bingham's favor. In response to Bingham's motion, the trial court conducted a full, separate hearing. At the hearing, Bingham was able to explain fully his stated reasons for seeking to withdraw his no contest pleas, and both Bingham and the State had the opportunity to speak, present evidence, and examine witnesses. Six days after the hearing, the trial court issued a thorough eight-page decision outlining the standards governing presentence motions to withdraw no contest pleas, applying those standards to Bingham's motion, and ultimately denying Bingham's motion after concluding that "there is no reasonable and legitimate basis for withdrawal of the plea[s]." Specifically, after discussing the evidence introduced at the hearing, the trial court found that the "credibility of the assertions in [Bingham's] motion to withdraw his plea[s] and his protestation of innocence are in serious question." The trial court also found that Bingham's "stated reasons for wanting to withdraw his plea[s] are not believable and there is no credible basis to determine that [Bingham] was perhaps not guilty or had a complete defense to the charges." Thus, the trial court conducted a comprehensive hearing on Bingham's motion, and it gave full and fair consideration to Bingham's reasons to withdraw his no contest pleas. Consequently, the fourth and fifth factors weigh against Bingham.

[¶ 50] In addition, we find that the seventh factor, Bingham's stated reasons for seeking to withdraw his pleas, does not weigh in Bingham's favor. Bingham notes that his "plea was largely the result of an inability of the defense to secure a subpoena for the appearance of [Calhoun] as a defense witness." He observes that after his pleas were entered, "Calhoun was found * * * and became cooperative at that point." Bingham argues that although Calhoun was then available to testify, he was "denied the withdrawal of the plea on the unreasonable basis that [his] assertion of the relevance to him of the Calhoun testimony was deemed by the Trial Court to be not credible."

[¶ 51] As noted by the trial court, the "determination of [Bingham's motion to withdraw] boils down to [Bingham's] self-serving contention that if Calhoun could have been subpoenaed, [Bingham] would not have entered the plea." The trial court ultimately found that this "stated reason[ ] for wanting to withdraw [the] plea[s] [is] not believable." Thus, contrary to his argument, the trial court did not reject the

motion to withdraw based on Bingham's belief about the relevancy of Calhoun's testimony. Instead, the trial court rejected Bingham's motion because it did not believe that Bingham was seeking to withdraw his pleas on that basis.

[¶ 52] At the hearing on the motion to withdraw, Bingham testified that he intended to call Calhoun as a witness at his trial. He also testified that it was "of great importance" to him that Calhoun be subpoenaed "because if [he] would have got [Calhoun] served then we would have had a trial already." Finally, Bingham contended that the failure to subpoena Calhoun "played a major factor in [his] decision to make the no contest plea." Yet, aside from Bingham's testimony, the record contains little suggestion that Bingham actually believed Calhoun's testimony was crucial to his defense or that his decision to plead no contest was induced by his failure to subpoena Calhoun. First, Calhoun was not mentioned as a potential defense witness until October 2018, nearly two and a half years after the proceedings against Bingham were initiated. Furthermore, as the trial date approached and efforts to subpoena Calhoun continued to fail, Bingham did not request a continuance, and he did not offer a satisfactory justification for why he did not seek one. Finally, at the change of plea hearing, Bingham did not mention Calhoun or state that he was entering his no contest pleas because his efforts to subpoena Calhoun were unsuccessful.

[¶ 53] As the trier of fact, the trial court was in the best position to assess Bingham's credibility concerning his reasons for seeking to withdraw his pleas. After reviewing the record, we find no reason to second-guess the trial court's credibility determination, especially considering that the record is otherwise devoid of evidence suggesting that Calhoun's unavailability prompted Bingham to plead no contest. Therefore, we find that the seventh factor does not weigh in Bingham's favor.

[¶ 54] Finally, we find that the ninth factor weighs against Bingham. At the hearing on the motion to withdraw, Bingham testified that Calhoun "was actually living at [419 S. Collett] at the time of the particular raid." He also suggested that the room in which cocaine was located was "the room where [Calhoun] was actually presiding [sic] at." Bingham argues that it "would have been reasonable for a jury to conclude" that Calhoun, as "the person having superior possessory interest in [419 S. Collett]," "was the more likely possessor of drugs found in that home, considering Bingham's recent arrival to the house right before execution of the search warrant and the lack of any controlled buys from Bingham."

[¶ 55] However, Calhoun's testimony at the hearing on the motion to withdraw severely impairs Bingham's claims of innocence. Calhoun testified that he was not living at 419 S. Collett on the date the search warrant was executed. While Calhoun conceded that he was still receiving mail at 419 S. Collett in April 2016, he stated that he ceased renting 419 S. Collett in December 2015, and he testified that all of his belongings were removed from the residence in February 2016. Calhoun testified

29

that he returned the keys to 419 S. Collett to Bingham in December 2015 and that he did not have keys to the residence in April 2016. Finally, Calhoun stated that the cocaine found in 419 S. Collett was not his cocaine and that he did not know to whom the cocaine belonged.

[¶ 56] After considering Bingham's and Calhoun's testimony, the trial court held that there was "no credible basis" to Bingham's claims that he was innocent or had a complete defense. Our review of the record leads us to conclude that the trial court's findings with respect to the veracity of Bingham's claims of innocence are supported by competent, credible evidence. Thus, we find that the ninth factor does not weigh in Bingham's favor.

[¶ 57] In conclusion, although the first and sixth factors weigh in Bingham's favor, we find that the remaining factors weigh against Bingham. Accordingly, we conclude that the trial court's decision to deny Bingham's presentence motion to withdraw his no contest pleas was not arbitrary, unreasonable, or unconscionable. Thus, we conclude that the trial court did not abuse its discretion by denying Bingham's motion to withdraw his no contest pleas.

*Bingham,* 141 N.E.3d at 630-35 (footnote omitted). In a footnote addressing the seventh factor, the court further explained:

Johnson's associations with the Allen County Sheriff's Office do not impact our treatment of the seventh factor. We agree with the trial court that "[t]he issue regarding Johnson is nothing more than a red herring." The record reflects that Johnson attempted dutifully to serve Calhoun with the subpoena. Although Bingham only hired Johnson to make three attempts at service, the record supports that Johnson attempted to serve Calhoun on five occasions in October 2018. Furthermore, the record establishes that Johnson conducted three hours of surveillance on a residence reportedly occupied by Calhoun in an effort to effect service of the subpoena. While Johnson's undisclosed associations with the Sheriff's Office were unfortunate, we simply do not agree with Bingham that Johnson's involvement was an "invasion of the defense team manifest[ing] in a failure to serve the subpoena on Calhoun."

*Id.* at 634.

Plainly, the appellate court reasonably concluded the plea was voluntary, having determined that, other than Mr. Bingham's self-serving contention, the record was devoid of evidence that his decision to plead no contest was induced by the inability to subpoena Mr.

30

Calhoun. Moreover, the Third District's determination that the plea was valid is presumed correct as the trial court's plea colloquy, referenced by the appellate court, adequately shows that the plea was voluntary, and Mr. Bingham has not rebutted that presumption with clear and convincing evidence under 28 U.S.C. § 2254(e)(1). As the plea is voluntary, Mr. Bingham's claim does not raise constitutional concerns. *Alford*, 400 U.S. at 31.

Mr. Bingham has not shown that the state court's adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, nor has he shown that the adjudication resulted in a decision based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). Therefore, if the District Court determines Ground Two is not procedurally defaulted, I recommend that the Court **DENY** the claim as meritless.

### CERTIFICATE OF APPEALABILITY

A habeas petitioner may not appeal the denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability (COA) and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a district court has determined a petitioner's constitutional claim to be without merit, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong" before receiving a COA. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid

31

claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* A showing that the appeal would succeed on the claim is not required to grant a certificate of appealability. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Mr. Bingham has not made a substantial showing of the denial of any constitutional right. Jurists of reason would not find it debatable whether the Grounds for Relief are valid claims of the denial of constitutional rights. Similarly, no procedural ruling appears to be in error. Therefore, I recommend the District Court not grant Mr. Bingham a Certificate of Appealability with respect to any ground.

## CONCLUSION AND RECOMMENDATION

For the foregoing reasons, I recommend Mr. Bingham's habeas petition be **DENIED**. I further recommend the District Court **DENY** a Certificate of Appealability for all grounds for relief.

Dated: August 1, 2023

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

## Objections, Review, and Appeal

**Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge.** *See* **Fed. R. Civ. P. 72(b)(2);** *see also* **28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.**

**Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or**

whether the party responds to the Report and Recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).